Good morning, Your Honors. May it please the Court, I'm Howard Davis, and I represent Jose Rosales, the petitioner, and I'd like to reserve about two minutes for rebuttal. In this case, the immigration judge and the Board of Immigration Appeals denied the petitioner's claim, CAT claim, because he provided no evidence that the Salvadoran government would acquiesce to torture, either through direct participation or willful blindness, and that he presented no individualized proof of torture that a government official or someone acting in an official capacity would acquiesce in the torture of the petitioner. The part of your case that interests me is the IJ's finding that nothing in the general background documentation would establish that a government official would be likely to acquiesce in the torture of Respondent specifically, and I wonder if that places a heavier burden on your client than Ninth Circuit law would, which is to say, it seems to me that you had to demonstrate government acquiescence in the kind of gang violence that Mr. Rosales described, but I don't know that you had to demonstrate that the government would acquiesce in his torture specifically, and I wonder if you'd agree with me there. Yes, and actually, this is really the first point I wanted to bring up, and it really has to do with the concept of acquiescence, and the cases are kind of all over on this. I mean, even the one discussed by the Respondent, Garcia Millian, yeah, it talks about that, you know, government ineffectiveness, general government ineffectiveness to prevent or investigate criminal activities doesn't raise an inference of the likelihood of torture, but on the other hand, it does talk about, it does use the inability language, and it then Let's assume you're right for a second. Let's assume that the I.J. applied the wrong standard in trying to determine whether or not there was acquiescence here. I'm reading from the I.J.'s findings, it's page 4. Therefore, the Court concludes that the evidence in this case simply is insufficient to establish that it is more likely than not that the Respondent would be tortured in El Salvador and or that there would be government acquiescence. So it seems to me the I.J. made two findings. One is that you hadn't sufficiently established that it was more likely than not that it would be torture, and also if there were, you hadn't established that it was more likely than not that it would be with the acquiescence of the government. So if there was an error on the second part, why does it, why should we grant a petition if the I.J. just found as a matter of fact that your client hadn't met his burden with respect to the likelihood of torture? So and or is a strange thing, but it suggests to me you didn't show either side of the equation. So, okay. So there's two, I mean, of course, I've been arguing that the agency looked at the evidence through too narrow a lens, but I think that you're. Well, but the first part is just is there a likelihood that is there a, here's the language. You have to establish that it's more likely than not that there's a likelihood that your client would have been tortured if returned to El Salvador. By whom is a separate issue. But you did. And the judge says you haven't established that. So why doesn't that make a case? Okay. So from what you just said. So you're assuming, let's say I'm right for one minute, that the judge didn't look at the issue, that that inability to prevent. Right. Assume that. Okay, let's assume that for one minute. Assume that if you had shown, excuse me, let me just phrase the term for you differently. Assume that if you had shown a likelihood of torture, then the judge would have applied the wrong standard in determining whether or not that torture would have been with the acquiescence of the government. But how do you get past the first part? Well, I mean, I think, so I think that if I understand correctly the question that there wasn't any, it's really sort of the second thing I mentioned, that there was no individualized, there was nothing individualized in his showing that someone in particular would be, would target him. He wasn't subject to torture when he lived there. Correct. Yeah. And he's been in the United States without authorization, correct, for about 25 years. Yes. So what's the baseline of his contention that someone like him would be tortured if returned? Even assuming government inability. Yes. Assuming that the government is dying to torture somebody when they return, the question is why him. The court, the I.J. says you haven't shown that it's more likely than not that you would be tortured if you returned. So I think one of the, you know, in thinking about this question, I mean, you have case law like Aguilera-Ramos that says that, and even the regulations that say that, or Aguilera-Ramos saying that the Catt claim may be satisfied with evidence of country conditions alone. And then in that decision it cites to Camaltas. Well, it may be satisfied. Yeah. It may be satisfied, but the question is, given what Judge Hawkins said, those are facts that might suggest that it's not so likely you'll be tortured. Why couldn't the I.J. Is the I.J. compelled to find a likelihood of torture here? I understand there are cases that suggest that country reports and conditions are the kind of evidence that would support it, but he says I've considered all the evidence and I don't think there's a likelihood you're going to be tortured. Is that Is there no evidence supporting that finding? Well, the I guess my problem is, is that really it begins a step earlier. The judge didn't take a look at the case in terms of inability, and it would be government's inability to protect against violence from gangs. So, I mean, to the effect that the judge Let me try this one more time. I think what the judge said was you haven't shown that it's more likely than not that you would be subject to violence by gangs. And then the judge may have made a mistake in determining whether violence by gangs was with government acquiescence. Deal with the first part of that. I mean, it might seem like I'm not answering the question, but the thing is I think that it's kind of a fruit of a poisonous tree, is that the judge didn't It's a factual question. The judge didn't look at all of this in terms of the inability. And so I think that's a factual question that the Court has to remand to the judge for looking I mean, it's a combination of looking at it through the correct lens plus the facts of the case. And I, since the judge didn't look at it in those terms, you know, it's not for this Court, you know, to make that decision. Let's suppose that the IJ has said, I don't think, Mr. Rosales, that you've proven that it's more likely than not that you'll be tortured if returned to El Salvador. And, this is a hypothetical, and because I've made that finding, I don't have to deal with acquiescence. Would that be error? On this record? That would not be enough, because again, you have to, you have to look at it with a particular legal lens. But torture is not, I mean, whether or not you're likely to be tortured is not a legal concept. It's what the legal concept here is by whom and with whose acquiescence. But it's really whether you're likely to be tortured, a legal concept as opposed to a factual concept. No, it's a factual, it is a factual, but, but I think that, again, it, your, one's factual conclusions is also going to be determined by the, and I keep on using this term, the legal framework and the lens through which one is looking at the record. And that's why, in that sense, the record is incomplete, because the judge was looking, out of the judge, on remand may say, sorry, you know, I'm looking at it through an ability now because I've been told I have to, and a, and a judge might find it in looking through that lens that he didn't meet his burden. But that hasn't happened yet. So on this record, is there anything that you can point to that would tie Mr. Rosales' fear of being tortured to, to him personally? That, is there, are there any facts that would suggest that? Only, only to the extent that he was forced to make the payments. I mean, he was afraid of the consequences that money was demanded, and then he, and then at some point he stopped, and that could be a problem for him. And also, if he comes back, if he returns, then he is returning basically to the same type of situation, and things have escalated over the years. And, yeah, I hate to say this, but I have like 11 seconds. We'll, we'll, we'll give you a minute. We'll give you a minute when you get back up. Okay. Thank you. Okay. Mr. DiMaggio. You came to the right city with your last name. So I hear. Mr. DiMaggio, I'm going to ask you the same, essentially the same question that I asked counsel, which is, did the, did the IJ apply the wrong standard by tying the notion of acquiescence to Mr. Rosales specifically? No, Your Honor. That, that standard is one that is naturally kind of found in the, in the regulatory language that applies here, as well as one that is kind of assumed by the court in its opinions addressing this issue. And I'll point to two specific places for that. 8 CFR 1208-18-A-1 defines torture for purposes of CAT as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person. And then further down in subsection 7, it defines acquiescence as, acquiescence of a public official as requiring that the public official prior to, to the activity constituting torture have awareness of such activity. Referring back to this definition of torture that relates to a person. Is that, is that really? So let's assume we have a government that says, we don't care if the gangs torture people. And somebody bullets, torture people that belong to a particular group. Do they really have to know in advance which people they're going to torture for there to be government acquiescence? No, because there the government would have, you know, blanketly confirmed in your hypothetical, which is not applicable here. The government would be saying essentially we're aware and we're, we're, we're going, they're stating affirmatively, we're going to breach our obligation to intervene, which would exactly fit the definition of acquiescence, which requires awareness and breach of the legal obligation to intervene. I understand, but you keep saying to a particular person and that's, I think that's the, the problem Judge Eaton's identified here. That is, does acquiescence really require that the government have an awareness that the torture will be aimed at a particular person or that there are torturers out there that they don't care to control? It does require to the particular person or at least a likelihood that that particular person would be tortured. And the reason that's the other, that's the other side of the equation. Now, there's two, there's, there's two problems here. One is, is there a likelihood that you will be tortured? Right. And then the second is, will your torturers act with the acquiescence or on behalf of the government? Right. But look at the second part with respect to the second part, which is sort of the legal part that your, your colleague is arguing. Is there really a requirement that the government have an awareness that the torture will be aimed at a specific person? But Your Honor, by necessity, there is a requirement that it has to be certainly narrower than, you know, the generalized conditions of the, in the country at large. Because, precisely because your hypothetical never is the circumstance, and I hope it never is the circumstance, that a country would say full, full stop. We know there's torture and we're not going to do anything to stop it. Well, there is a fair amount of evidence in this record and in other records that we see that some governments in Central America, maybe not this one, are corrupt and say to the gangs, do what you want as long as you give us money. And they know the gangs aren't torturing people. Assume that hypothetical for a second. Does the government really have to know that it's Mr. Rosales that the gang is going to torture? Well, what the government has to, well, what the agency has to do is it has to, and this is clear in the case law, it has to ascertain the specific circumstances of the given petitioner to understand, does this context equate to a likelihood? That's the other side of the equation, Judge Hurwitz. We're on the first de facto side now, and as I suggested to your colleague, I think the agency's ruling may stand independently on that. You're talking about the legal side of the equation. If he had shown a likelihood of torture, would it be with the acquiescence of the government? And I guess what I'm resisting is the notion that acquiescence requires an awareness that this particular person will be tortured. Well, Your Honor, as I stated at the outset, I do believe that it's a natural reading. Certainly, to start with, hopefully, what we all agree on, torture is certainly requiring specificity. Would this individual likely be tortured? And again, a natural reading of that same regulation and this Court's case law addressing acquiescence is that this individualized analysis, or at least a circumstance-specific analysis, if Your Honor takes umbrage with the use of the word individualized as to the specific person, hopefully the Court will at least agree that there's a circumstance-specific inquiry that has to happen here. Is it the government's position that a petitioner can never be entitled on this first prong to cat protection by saying, here's my circumstance, and here's proof that people of my circumstance are subjected to torture with the government turning a blind eye to it? No, no, Your Honor, that's not the government's position. That's exactly what should be happening. So a petitioner should be saying, here are my circumstances, and here's why this will lead to my eventual torture, because the government's going to turn a blind eye to this. Relevant to that inquiry is a number of factors, including whether that's happened in the past and the current country conditions. But so to answer your question, again, no, that's not the government's position. One thing the government would like to note, as the panel has already acknowledged in the questioning of Mr. Rosales' counsel, Mr. Davis, at record pages 3 and 44 here, the agency found that both the torture and the state action prongs were unsatisfied. Based on here, what can only be described as a paucity of individualized evidence. So go back to your colleague's point and see what you can tell us about it. He says, that may be true, but there's a poisonous tree here, if you will. There's a legal error on the acquiescence side that somehow seeped over to the factual torture side. Can you respond to that? Who mean that there is a legal error? The government would disagree with that. The regulation, and again, the case on this is very clear, that there are two prongs to the CAT analysis, and they are independently dispositive because they must both be satisfied. The first prong is the likelihood of torture, and the second is with the government acquiescence. And here, the agency reasonably concluded that there was no individualized likelihood of torture. And on this factually too thin record, on petition for review, the record cannot compel a contrary finding on either of these. Consider, first of all, the petitioner alleges no legal errors as to the likelihood of torture analysis, except for the plainly faulty one that the agency considered only the factor of past torture. So having cleared the deck of any potential legal errors, we're looking at why the absence, why substantial evidence supports that finding. And we have first the context, which was noted by the agency at record page 43, that Mr. Rizal has abandoned his INA based asylum and withholding claims based on a lack of nexus. So already we're implicitly conceding, or he's implicitly conceding, he won't be targeted for torture based on those protected grounds, at least. Yeah, but you don't need a protected ground. You don't, but now we've wiped those off the deck. So now what do we have left? We look at his testimony, which was considered by the agency. It occupies only 15 pages of transcript, and it is as simple as he left El Salvador after unspecified gang members took his money when he was 17 or 18 years old. The gang members never verbally threatened him or tortured him. He does not challenge the board's conclusion that the beatings he witnessed or threats thereof would amount to torture. And he had no contact and has had. Sorry, could you repeat that last, what you just said? So the board concluded that even assuming that these, he alluded in his testimony to a beating he witnessed when someone didn't pay the money. The board concluded that any such beating or any implicit threat in that kind of a beating, to the extent that the beating would amount to an implicit threat to a bystander who's observing it, would not rise to the level of torture. That the beatings themselves would not rise to the level of torture? Right. These, the case law in the Ninth Circuit indicates that beatings can, in fact, equal torture. They can, but the board found here that these wouldn't. And my point is that Mr. Rosales does not challenge that finding by the board. So at bottom here, what we have is even if you assume that what exactly what he thought, how about this notion that he didn't report any, anything to the police? Does that actually matter? Well, yes, but we would be getting into the acquiescence analysis for that, Your Honor. And it matters plainly because it goes to the fact of whether or not the government was aware. It's relevant to whether the government was aware. And it is not. The case law indicates that the lack of a report doesn't necessarily indicate that they weren't aware. Right. Since here we have plenty of evidence based on the country reports that they were not only acquiesced, but were complicit. I wonder if this, if that finding actually matters at all in the context of this case. Well, when you say matters, it certainly is relevant one way or another. It cuts in the indication that there was likely not awareness specifically as to this individual. He can't say, for example, which would be highly relevant and helpful for him, that, you know what, the police here saw me in particular beaten and they did not respond when I reported this to them. I'm looking at the IJ's findings in this case. The IJ doesn't make the finding, you say, that beatings don't arise to torture. The board does. I know, but the board can't make, can the board make that finding on this record? The IJ just simply says, you haven't shown that it's more likely than not that any of this will happen to you because you've been gone so far from the country and it never happened to you before. I'm not sure the IJ makes a finding that, that even if the, he finds him credible. So even if these beatings occur, even if these beatings that you witnessed were not torture, is there really a finding of that in this record? Well, Your Honor, there's certainly, the board does at page four conclude that he doesn't certainly indicate on his appeal to the board how any of these beatings would have amounted to torture, which by extension might have resulted in some kind of a problem by the IJ. He says he hasn't indicated that, but I'm not sure there's a board finding that if they occurred, if he were subjected to these, it wouldn't be torture. Well, just to be sure, Your Honor, on page four in the first full paragraph, in the middle of it, the board notes, the respondent argues that past torture or threats thereof are not, oh, forgive me, further down, four lines up from the bottom, the respondent argues that he witnessed the beatings of other people who refused to give money to the gang members, thus constituting implicit unspoken threats of receiving the same treatment if he did not pay. However, he has not established that such beatings or threats of such meet the definition of torture. And I suppose that could be referring to the fact that he did not present that claim to the IJ below. So he can't rely on that, on appeal to the board. Okay, we've used up your time and you've used up some of ours, so we thank you for your argument. Thank you, Your Honor. For those reasons and for the reasons in the government's brief, we ask that you deny the petition. I just wanted to state, okay, one thing that goes to the, what is it that the, that the authorities, that has to be aware of, and I'm citing to Madrigal at 716 Fed 3rd at 509, where it says, it is sufficient that the public official be aware that torture of the sort feared by the applicant occurs and remain willfully blind to it. It's, it's, so it's, it's not as personalized. It's of the sort that is feared by the applicant. And just getting to the whole thing about the consequences of a failure to pay is often results, not only in harassment speeding, but in violence by gang members that could lead to, that could rise the level of torture. And with that, I rest and I ask that the court remand to the, to the agency. Thank you. We thank both Mr. Davis and Mr. DiMaggio for their arguments and their briefing and the case will be submitted.
judges: Hawkins, Hurwitz, Eaton